Matthias, J.
 

 The demurrer to the second and third defenses of the answer squarely presents the question of the force and effect of the provisions placed by the telegraph company upon the back of the telegraph blanks furnished by it to its customers, and to which provision reference is made on. the face thereof.
 

 It is to be observed that the provision set forth in. the second defense limits the liability of the company for mistakes or delays in the transmission or delivery, or for nondelivery, of any unrepeated message to the amount received for sending the same, which is practically an' exemption from all liability, and that a further provision, the one set forth in the third defense of the an
 
 *143
 
 swer, stipulates that in any event the company shall not he liable for mistakes or delays in the transmission of such message, whether caused by the negligence of its servants br otherwise, beyond the sum of $50.
 

 Concededly the message involved in this transaction was an unrepeated message, and it is manifest that both of these stipulations, set up by way of defense, have reference to án unrepeated message. The great majority of the states of the Union consistently held invalid such stipulation wholly exempting the company from liability for damages resulting from its negligence, whether the message in question was interstate or intrastate, until passage of the amendatory act of Congress, June 18, 1910 (36 Stats, at L., 544; Section 7884
 
 et seg.,
 
 Barnes’ Fed. Code; Section 8563
 
 et seq.,
 
 U. S. Comp. Stats.,) whereby interstate telegraph messages were placed under the control of the Interstate Commerce Commission. Congress thereby took exclusive control of interstate telegraphic business, and the holding of the Supreme Court of the United States in
 
 Western Union Telegraph Co.
 
 v.
 
 Brown,
 
 234 U. S., 542, 34 Sup. Ct., 955, 58 L. Ed., 1457, that under this act common carriers of interstate commerce may limit the amount of the recovery.on account of damages resulting from the carrier’s negligence, has necessarily been followed and applied by the several states. It is quite clear, therefore, that were we dealing with an interstate message the. decision of above and subsequent cases would apply and govern. Concededly, however, this message being an intrastate message, it is not affected by the rule's
 
 *144
 
 and regulations of the Interstate Commerce Commission, and hence not controlled by the federal decision above referred to.
 

 Since the decision of
 
 Davidson
 
 v.
 
 Graham, 2
 
 Ohio St., 131, conditions or stipulations whereby common carriers have attempted to exempt themselves from liability for acts of negligence have been held invalid. In the case of
 
 Western Union Telegraph Co.
 
 v.
 
 Griswold,
 
 37 Ohio St., 301, 41 Am. Rep., 500, this court had before it a question identical with that presented by the demurrer to the second defense. The stipulation involved in that case also contained a limitation upon the liability of the company for errors or delays in the transmission or delivery of unrepeated messages. In that case this court held:
 

 “
 
 (1) While a telegraph company may, by special agreement, or by reasonable rules and regulations, limit- its liability to damages for errors or mistakes in the transmission and delivery of messages, it cannot stipulate, or provide, for immunity from liability, where the error, or mistake, results from its own negligence. Such a stipulation, or regulation, being contrary to public policy, is void.
 

 “(2) Where, in an action against the company for damages resulting from an inaccurate -transmission of a message, such inaccuracy is made to appear, the burden of proof is on the company to show that the mistake was not attributable to its fault or negligence.”
 

 The conclusion of the court was based upon its holding that any stipulation or regulation, by which the company undertook to relieve itself of the duty
 
 *145
 
 to exercise the skill and care which a careful and prudent man would exercise under the circumstances, was contrary to public policy and consequently void. In that case a judgment rendered against the company, amounting to some $1,200, was affirmed.
 

 ¡Since the decision of the
 
 Griswold case,
 
 the question of the validity and effect of the provisions limiting liability appearing on the telegraph blanks used by the Western Union Telegraph Company has been before this court in two other cases, which, though unreported, indicate the court’s adherence to the rule announced in the
 
 Griswold case.
 
 The first is that of
 
 Western Union Telegraph Co.
 
 v.
 
 Priddy,
 
 81 Ohio St., 506, 91 N. E., 1143, decided in 1909. A verdict was rendered in the common pleas court in favor of the plaintiff for the full amount prayed for, and that was affirmed by the circuit court and by this court. The other is the case of
 
 Bellstedt
 
 v.
 
 Western Union Telegraph Co.,
 
 83 Ohio St., 493, 94 N. E., 1101, where this court affirmed a reversal of the judgment rendered for plaintiff in the trial court; but the judgment of reversal which this court affirmed seems to have been based on a consideration of the weight of the evidence. The records in those cases disclose that the provisions limiting liability were substantially like those in the
 
 Griswold case.
 
 The
 
 Griswold case
 
 has been cited by the courts of last resort in numerous other jurisdictions, most of the state courts having applied the same rule and adhered thereto until the passage of the amendatory act of 1910 above referred to and the holding of the United States Supreme Court that Congress
 
 *146
 
 thereby had. taken exclusive control of interstate telegraph business. The cases upon opposite sides of this proposition are so numerous that we shall not attempt to comment upon or even refer to them in detail. They are cited in 37 Cyc., 1684, and in 26 R. C. L., 571, where it is stated:
 

 “The great weight of authority as disclosed by the decisions in the various states is, however, apparently to the effect that, in so far as the telegraph company seeks to relieve itself from liability for its negligence, such a stipulation is against public policy, and void.”
 

 However, we refer to one of the most recent eases in point, that of
 
 Shawnee Milling Co.
 
 v.
 
 Postal Telegraph Cable Co.,
 
 101 Kan., 307, 166 Pac., 493, L. R. A., 1917F, 844, wherein an intrastate message was involved, and it was held:
 

 “In conducting its intrastate business a telegraph company may make reasonable stipulations limiting its liability, but in the absence of positive or permissive statutes governing the subject, the reasonableness of any such stipulation is a question for judicial determination.
 

 “A stipulation, limiting a telegraph company’s liability in damages for an error in transmission of a telegram to a mere return of the rate exacted for sending it, is unreasonable.”
 

 The grounds upon which are based the decisions of the courts of the various states holding such stipulations void and unreasonable have been thus summarized in Jones on Telegraph and Telephone Companies (2d Ed.), Section 377. Such stipulations may be considered as a mere device for avoiding liability for acts of their own negligence
 
 *147
 
 or willful wrong, and they should not he permitted to enforce any regulation or contract, by means of which they may relieve themselves for any loss caused by their own negligence, or that of their servants. Any rule which seeks to relieve them from exercising their employment with diligence, skill, and integrity contravenes public policy, and whenever they attempt to avoid these duties they do so at the expense of and injury to their patrons.
 

 In a comparatively recent case,
 
 Baltimore & Ohio Rd. Co.
 
 v.
 
 Hubbard,
 
 72 Ohio St., 302, 74 N. E., 214, the Supreme Court of Ohio had before it for consideration the validity of a contract of a railroad company and shipper, wherein the amount of the liability for loss or damage to property accepted by the company for shipment was limited, and such contract was held valid because the rate of transportation was determined by and was dependent upon the value of the property; and therein the court clarified the rule applicable to such cases, and by its application the issue made by the third defense in this case may be distinguished from that made by the second defense. In the
 
 Hubbard case,
 
 at pages 315 and 319, of 72 Ohio St. (74 N. E., 214, 218), it was said:
 

 “It is not a contract of exemption from liability for the negligence or wrongful conduct of the company or its employes, and its terms cannot be construed to provide for any such exemption.. If it did undertake to so provide, it would be condemned as invalid by a uniform current of authority. A common carrier cannot save itself from liability for its negligence and wrongful acts, by any contract to that effect. * * * The railroad
 
 *148
 
 company is not striving to escape payment of any sum on account of its negligence, but to limit the amount of recovery to an agreed valuation, in case of loss or damage as the result of its negligence, or otherwise. * *
 
 *
 
 The shippers, under this contract, * * # obtained a low rate of transportation for which they were willing to allow the carrier to place a money limit on its liability. It is not a stipulation to exempt from liability for negligence, but a limit on the
 
 amount
 
 of liability for which the carrier should respond in case of loss or damage.”
 

 And authorities are cited supporting that proposition.
 

 It must be borne in mind that the second and third defenses in the case at bar were disposed of upon demurrer. In the alleged stipulation of the contract, set up in the third defense, it clearly appears that the valuation of the message was stated to be $50, and the rate charged was based upon that valuation. Upon the submission of the case to this court it was argued that under the provisions of Sections 614-16 and 614-18, General Code, the entire matter of rates, classifications, and rules and regulations governing the same, is under the jurisdiction of the Public Utilities Commission of the state, and that the defendant having filed its schedules showing all rates, classifications, rules and regulations, etc., in compliance with those provisions, and the stipulations set forth in the second and third defenses being a part thereof, such schedules must govern and control the transaction involved in this case, the contention of counsel being that our statutory provisions conferring
 
 *149
 
 certain jurisdiction upon the Public Utilities Commission are analogous to the federal law conferring similar jurisdiction upon the Interstate Commerce Commission as to interstate messages, and that the decisions of the Supreme Court of the United States in the ease of
 
 Western Union Telegraph Co.
 
 v.
 
 Esteve Brothers & Co.,
 
 256 U. S., 566, 41 Sup. Ct., 584, 65 L. Ed., 1094, and in the very recent case of
 
 Western Union Telegraph Co.
 
 v.
 
 Czizek,
 
 264 U. S., 281, 44 Sup. Ct., 328, decided March 10, 1924, should be followed and applied. It is sufficient to say that such question is not presented by the pleadings and therefore cannot be and is not decided. However, our conclusion with reference to the third defense, though the same is based upon contract and not upon schedule rates filed with the Utilities Commission, finds support in the two cases just cited.
 

 For the reasons stated we hold that the trial court was in error in sustaining the demurrer to the third defense, and that the judgment of the Court of Appeals, in so far as it affirmed that ruling, was erroneous. The judgment is therefore reversed and the cause remanded to the court of common pleas, with direction to proceed in accordance with this opinion.
 

 Judgment reversed.
 

 Robinson, Jones and Day, JJ., concur.
 

 Wanamaker, J., not participating.