**HILLEARY, Plaintiff-Appellee, v BROMLEY, ET, Defendants-Appellants.**

Ohio Appeals, Second District, Franklin County.

No. 3993. Decided May 9th, 1947.

· Paul R. Gingher, and J. Paul McNamara, Columbus, for plaintiff-appellee.

John F. Ward, Columbus, and Knepper, White & Dempsey, Columbus, for defendants-appellants.

**OPINION**

By MILLER, J.

This is an appeal on questions of law from the Court of Common Pleas of Franklin County, Ohio. This case is before this Court for the second time, the judgment resulting from the first trial having been reversed by the Supreme Court for error of the Court in instructing the jury to return a verdict for the defendants at the close of plaintiff's case. The evidence developed at the second trial on behalf of the plaintiff is practically the same as that of the first trial, although counsel for the defendant is contending otherwise.

The record discloses that the defendants were partners engaged in the business of furnishing, selling and applying roll siding on dwelling houses; that the plaintiff, Robert L. Hilleary, was an employee of the defendants for approximately eight days, during which period of time he was instructed in the methods approved by the industry and profession of applying roll siding as furnished by the defendants. Prior to April 6, 1940, the defendants agreed to apply siding on a dwell-

ing house on Hosack Street in the City of Columbus. The defendants in turn entered into a sub-contract with the plaintiff whereby the latter agreed to apply the siding on the house in question and defendants agreed to furnish the plaintiff for such purpose good safe equipment consisting of ladders, jacks and planks. Pursuant to such agreement the defendants furnished and delivered to the plaintiff at the site where the siding was to be applied, the equipment above mentioned with the knowledge that the ladders so furnished were expected to bear the weight of one or two men, the jacks, the planks and sufficient material, which might weigh about 75 pounds, to cover the surface being worked upon.

The plaintiff inspected the ladders each day he used them, but discovered no defects therein. There was no inspection of the ladders to determine the weight, stress or strain which they would bear, except by the manufacturers thereof, and the evidence discloses no inspection of the ladder in question by defendants for any purpose. The defendants purchased these ladders new several months previously from a responsible hardware dealer and seem to have relied upon this fact and assumed that they would be safe. They were painted by the defendants soon after coming into their possession and before they were delivered to the plaintiff. This to some extent obscured the grain of the wood.

On April 6, 1940, the fourth day after the work had been started on this job, the plaintiff placed three of the ladders against the side of the house approximately 12 to 14 feet apart. The jacks were hooked upon and suspended from the upper rungs of the ladders and in turn supported two planks extending between the ladders. While the plaintiff and a helper were standing on one of these planks, suspended between an end ladder and the middle ladder, the inside rail or upright of the end ladder broke into the third rung and then split at the rung down past the fourth rung and out between the fourth and fifth rungs, with the result that the plank upon which the plaintiff was standing and the plaintiff himself were precipitated to the ground, a distance of about 16 feet. Plaintiff's foot was severely injured, resulting in a permanent injury. Subsequent examination of the ladder rail indicated that the split followed the grain of the wood.

The plaintiff brought this action to recover damages for his injuries, alleging in his petition that they resulted from the negligence of the defendants in furnishing him a ladder which was defective and inadequate for the purpose for which it was to be used.

The answer set up the following three defenses:

(1) A general denial.

(2) Sole negligence of the plaintiff.

(3) The plaintiff assumed the risk.

The errors assigned may be epitomized as follows:

1. The verdict is contrary to law and against the manifest weight of the evidence.

2. The trial court erred in refusing to direct a verdict in favor of the defendants at the close of plaintiff's case and at the close of all the evidence; also in overruling the motion of the defendants for judgment in their favor notwithstanding the verdict of the jury.

3. The trial court erred in withdrawing from the consideration of the jury the portion of Defendants' Exhibit "A" wherein the plaintiff contractually assumed the risk of injuries resulting from his work and released the defendants of and from any claims for damages or compensation arising out of such injuries.

4. The trial court erred in its general charge to the jury.

5. The Court erred in omission and rejection of evidence.

6. The trial court erred in overruling the motion of the defendants for a new trial.

7. Other errors apparent upon the face of the record.

Considering the first assignment of error, we find that there is substantial testimony in the record to support all of the material allegations of the petition, and that the verdict is, therefore, not against the manifest weight of the evidence. A judgment will not be reversed on the weight of the evidence unless it is manifestly and clearly so. A mere difference of opinion between the Court and jury does not warrant the Court in setting aside the verdict. It is a general rule that a verdict should not be set aside if it is supported by any competent, credible evidence. Neither is the verdict contrary to law, as our Supreme Court in the same styled case reported in **146 Oh St 212,** stated that under this state of facts the question became one for the jury to decide. The Court, by virtue of the law previously announced in this case, ruled properly in submitting the case to the jury and in overruling the motion for a judgment in favor of the defendant notwithstanding the verdict of the jury. The record contains substantial testimony, as stated previously, which supported the material allegations in the petition, and it became a factual question for the determination of the jury.

The defendants in their argument misconstrue the facts by stating that the plaintiff had **only the privilege** of using

equipment owned by the defendants. George W. Bromley admitted several times upon cross-examination that he agreed to furnish this plaintiff good safe equipment. The bailment is still one for the mutual benefit of the parties, as announced by the Supreme Court when it previously considered this case. The obligations and duties of the bailor and bailee were clearly set forth in the opinion by Judge Hart and we shall not again restate them.

Considering the next alleged error in withdrawing from the consideration of the jury a portion of Defendants' Exhibit "A", wherein the plaintiff contracted to assume the risk of injuries resulting from his work and released the defendants of and from any claim for damages or compensation arising out of such injuries, we find the third defense of the amended answer alleged:

"that plaintiff assumed the risk of injury sustained by him during the performance of said work and, by the terms of said written contract of April 3, 1940, and for valuable consideration, plaintiff assumed full and absolute liability for himself and his employees and therein and thereby released defendants from any and all liability or compensation for accidental injury to himself or his employees."

The contract referred to in the answer was introduced in evidence and marked Defendants' Exhibit "A", and provided in its fourth paragraph:

"The party of the second part (Plaintiff) hereby agree and understand that he is accepting this subcontract and are assuming full and absolute liability for him and his employees and further release the party of the first part (defendants) from any and all liability or compensation for accidental injury to themselves or their employees." (Parenthesis ours.)

When said contract was admitted in evidence the Court excluded from it the above quoted language, and then in charging the jury withdrew from its consideration the third defense. Now, did the Court err in this ruling? It should be remembered that the defendants expressly orally agreed to furnish the plaintiff good safe equipment. This oral agreement was never rescinded, modified or terminated and no such claim is made by the defendants. Defendants' Exhibit "A" does not purport to contain all of the terms of the agreement between these parties. The subject matter of the equipment

to be furnished by the defendants for plaintiff's use is not mentioned in this document. This defense would, therefore, have no application to the oral agreement of the defendants to furnish good safe equipment. Even if this defense had application, the contract of the plaintiff to assume all risks of injury would be void as being contrary to law and against public policy. Such a pronouncement was recently made in the case of **Insurance Company v Constantine, 144 Oh St 275,** wherein Judge Bell said:

"There is no evidence in this record to support the conclusion that the bailor ever assented to or even knew of the printed conditions upon the parking ticket. However, **a more cogent reason why this bailor was not bound by those conditions is that they are contrary to law and against public policy."** (Emphasis ours.)

The printed conditions referred to provided that the bailee would not be liable for loss or damage of cars, accessories or contents from whatever cause arising while in his possession. Continuing the Court said:

"By that language the bailee attempted to avoid liability for his own negligence as well as that of his agents or servants and, if the printed conditions are enforceable, the language is broad enough to avoid liability for any wanton or wilful misconduct on the part of such bailee, his agents or servants.

"The attempted limitation of liability here under consideration cannot be upheld either upon reason or authority. * * *

"The general rule is well stated in 6 American Jurisprudence, 270, Section 176, which reads in part as follows: 'It is now apparently well settled that a bailee for hire cannot, by contract, exempt himself from liability for his own negligence, or that of his agents or servants. * * * Contracts limiting liability for negligence in bailments for hire in the course of a general dealing with the public are generally regarded as against public policy'. "

It will be noted that in this case it was the bailee seeking to escape liability. However, the principle is applicable irrespective of the position of the parties.

We also find in **5 O. Jur., Sec. 21,** at **p. 114** it is stated:

"Ordinarily in bailments the parties may diminish the liability of the bailee by special contract, provided the contract is not in violation of law or of public policy, and does not relieve the bailee of negligence. As a bailee for hire impliedly contracts to use ordinary care, it follows that he may not contract against his own negligence or the lack of such care."

Citing **Hotels Statler Co. v Safier, 103 Oh St 638; 22 A. L. R. 1190; 134 N. E. 460.**

In order to maintain their position, defendants' counsel have argued this point by analogy to the master-servant and employer-employee relationship. Such a provision in a contract between parties in that relation is likewise illegal and void. See 2 Restatement of Contracts, Section 575, and the Ohio Annotations thereunder. The defendants in this case owed the duty to this plaintiff in the furnishing of equipment, of exercising ordinary care to make the chattel which is the subject of bailment safe for its intended purpose or to inform the bailee of the unsafe condition in the chattel which it was the duty of the bailor, in the exercise of ordinary care, to discover. The defendants could not and did not free themselves from this obligation by the contract identified as Defendants' Exhibit "A".

The next alleged error is that the Court erred in its general charge to the jury. The Court in its charge to the jury made the following statement:

"Now, with reference to sole negligence, the defendants claim that the plaintiff was negligent in that this thing was occasioned by the improper adjustment of the equipment, the improper use of the equipment; also the defendants say that the plaintiff overloaded the structure, the scaffold, and the ladder upon which the scaffold and the jacks were placed, that he improperly placed the jacks, and that this weight was greater than the capacity of the ladders or equipment would bear, greater than they were intended to bear. Now, that is denied by the plaintiff; what the fact is, you are to ascertain and determine, but I say to you that if the breaking of this side rail was occasioned by overloading or by the improper adjustment or placement of any of this equipment, that would constitute negligence. **But if, on the other hand, the plaintiff had arranged the equipment or fixed the equipment or used it in the manner that was provided by the profession or indus-**

try in which he was engaged, of course, then he could not be said to be negligent. Now what the fact is relative to this, is for your ascertainment and determination, based on all the facts and circumstances here in evidence before you."

The parts emphasized are claimed by the defendants to be erroneous, prejudicially erroneous, citing **Ault v Hall, 119 Oh St 422,** wherein it was held:

"3. Customary methods of conduct do not furnish a test which is conclusive or controlling on the question of negligence or fix a standard by which negligence is to be gauged, but conformity thereto is a circumstance to be weighed and considered with other circumstances in determining whether or not ordinary care has been exercised.

"4. Methods employed in any trade, business or profession, however long continued, cannot avail to establish as safe in law that which is dangerous in fact."

We are of the opinion that the facts in this case are not on all fours with the case at bar, for Chief Justice Marshall made the following comment on page 434:

"The plaintiff was unconscious, and there is nothing to show that she understood the system whereby sponges were to be accounted for and there is nothing to show that she was consenting that the surgeon should be relieved of all responsibility by employing a system which was entirely reasonable within itself."

The facts in our case show that the plaintiff was taught by the defendants' employees the method of constructing the scaffolding as approved by the industry or profession, and the defendants are chargeable with this information and their consent thereto. Having approved of the method used by the profession or industry, the defendants cannot now be heard to complain as to that.

We therefore think the charge is proper and not erroneous.

The defendants are contending further that because the plaintiff was furnished four 20-foot sections of ladders and only three were used, that he had the right to select whatever equipment he desired, and that because he selected the particular ladder which broke, from a supply of ladders on hand, the liability of the defendants was not the same as if they had

directed the plaintiff that this particular ladder should be used by them. We do not agree with the conclusion of the defendants that the evidence shows that the plaintiff selected whatever equipment he desired. The record shows that the defendants furnished and delivered to plaintiff at the site of the work the particular ladder that broke. The agreement of the defendants was to furnish good safe equipment. The ladder that broke was a part of this equipment and not raw material from which a selection was to be made by the plaintiff as in the cases cited by defendants.

The defendants contend further that plaintiff, as an employer and as a workman for himself, was bound to comply with the safety regulations of the Ohio Department of Industrial Relations and his failure to do so deprived him of the right to recover in this case. These Safety Regulations were introduced in evidence and without objection, both parties referring to certain provisions thereof. The plaintiff contended to the jury that the evidence showed that the defendants violated certain of these requirements. The defendants contended that the evidence showed that the plaintiff violated some of these requirements. Let us assume, for the sake of argument, that the evidence showed that both parties violated these requirements. The question of what negligence was the proximate cause of the injury was still for the jury to determine. The Court correctly charged on these requirements. The question of proximate cause of the injury was properly left for the determination of the jury.

We find no error in the record and the judgment is affirmed.

WISEMAN, PJ, and HORNBECK, J, concur.