FRENCH, APPELLANT, *v.* SPECIAL SERVICES, INC., APPELLEE.[*]
BODNAR, APPELLANT, *v.* SPECIAL SERVICES, INC., APPELLEE.[*]

(Nos. 453 and 454—Decided November 13, 1958.)

*Messrs. Hyman & Hyman* and *Messrs. Young & Young,* for appellant in cause No. 453.

*Messrs. Chorpening & Chorpening,* for appellant in cause No. 454.

*Mr. Kenneth J. Nordstrom,* for appellee.

PUTNAM, J. These cases are companion cases and, while in cause No. 454 it is maintained that it has one unique feature, nevertheless, we think that, in the light of our conclusions, a single opinion will suffice.

These cases arise out of an action for damages, in negligence, against the proprietor of a race track by parties who engaged in stock car races for prizes. In both cases the plaintiffs alleged negligence of the defendant in certain respects. In neither case were facts alleged in the petition bringing the actions within the purview of wanton or willful misconduct. In both cases it was admitted by the plaintiffs that, prior to their

[*]Motions to certify the records overruled, February 11, 1959.

entry into the races, they signed a release as follows, which was set up in the defendant's answer:

"Whereas the undersigned wishes to compete in auto racing under the rules of the Special Services, Inc., and

"Whereas the undersigned knows of the perilous nature of his undertaking as it relates to loss of life and/or limb, therefore it is agreed as follows:

"That in consideration of being allowed to compete in auto racing events the undersigned hereby voluntarily assumes all risks of accident or damage to his person or property and hereby releases the Special Services, Inc., and its stockholders from every claim, liability, or demand of any kind for or on account of any personal injury or damage of any kind sustained, whether caused by negligence of the said Special Services, Inc., and its stockholders or otherwise."

A demurrer was filed to these answering defenses in both cases, and each was overruled. Thereupon, replies were filed, which admitted the execution of the above releases but claimed, in cause No. 453, that the same was without consideration and void as against public policy and, in cause No. 454 where those same contentions were made, in addition it is claimed that the intent of the release did not cover the situation exhibited in the allegations of the petition. The trial court thereupon, in both cases, upon a motion for a judgment on the pleadings, rendered judgment for the defendant. This appeal on questions of law results, and the errors assigned are in substance that those judgments are contrary to law.

Counsel on both sides agree that there is no specific announcement by the Supreme Court of Ohio under the facts of the instant cases, but they are not agreed as to the impact of certain other decisions in other states on the previous announcements of the Supreme Court of Ohio in cases which may or may not be analogous.

In both of these cases the trial court rendered a 15-page opinion, much of it the same in both cases, in which the propositions involved were given extended and well-documented consideration. Since we agree with the conclusions of the trial court and its reasoning, we might well affirm these decisions for the reasons and the authority therein expressed, except for the

fact that in our court arguments were presented and Ohio authorities cited which seemingly were not before the trial court. Therefore, it is necessary first for this court to summarize the decision and opinion of the trial court and then add thereto our analysis of the cases cited and certain remarks of our own.

The plaintiffs contentions were that this release is invalid for want of consideration and because it is against public policy. The trial court first pointed out that the release was plain and unambiguous and that the consideration therein expressed, viz., the privilege of competing in races for prizes, was a valuable one. In considering the question of whether the release was void as against public policy, it was first pointed out that under the Constitutions of the United States and the state of Ohio it is forbidden to pass laws impairing the obligation of contracts, yet it was recognized that in some cases public policy interdicted certain types of contracts.

The court then took the law from 2 Restatement of the Law of Contracts, 1079, Sections 574 and 575, and demonstrated that the cases under consideration did not fall within any of the illegal situations therein set forth.

The court then pointed out that a standard has been adopted in Ohio for the protection of persons against unreasonable risk of harm in automobiles and aircraft, and this is the so-called "guest statutes," Sections 4515.02 and 4561.151, Revised Code, which provide against liability of the operator except in cases of wanton or willful misconduct. The court was of the opinion that public policy did not demand a different rule in stock car races, and the court concludes this phase of its opinion with the following observation:

"The defendant, Special Services, Inc., not being a public utility or common carrier, and not owing any obligation of public trust to the plaintiff, a contestant, and not being the plaintiff's employer; the court finds that plaintiff and defendant were free to contract in such a manner as to relieve the defendant from the responsibility for damage or injuries to the plaintiff, caused by the defendant's negligence, excepting when caused by willful or wanton misconduct."

It was then pointed out that the pleadings did not present a question of willful or wanton misconduct. The cases of *Corpus*

*Christi Speedway, Inc.,* v. *Morton* (Court of Civil Appeals of Texas), 279 S. W. (2d), 903, and *Broderson* v. *Rainier National Park Co.,* 187 Wash., 399, 60 P. (2d), 234, were cited principally in support.

In the *French case,* No. 453, in argument before this court, the following cases, which were evidently not argued or presented to the trial court, were cited and relied upon: *Speroff* v. *First-Central Trust Co.,* 149 Ohio St., 415, 79 N. E. (2d), 119, 1 A. L. R. (2d), 1150; *Western Union Telegraph Co.* v. *Edministon,* 110 Ohio St., 139, 143 N. E., 529; and *Hilleary* v. *Bromley,* 82 Ohio App., 219, 75 N. E. (2d), 818. These cases are all distinguishable on the facts and come within the interdicted situations as pointed out in 2 Restatement of the Law of Contracts, Sections 574 and 575, *supra.*

In the *Western Union case* the attempt to limit its liability for negligence in the transmission of messages given it by the public for transmission was declared to be against public policy. The decision was based in part upon the case of *Baltimore & Ohio Rd. Co.* v. *Hubbard,* 72 Ohio St., 302, 74 N. E., 214, which was a common carrier case. The *Western Union case* comes squarely within Section 575(b) of 2 Restatement of the Law of Contracts, at page 1080, which states that the contract is illegal if ''one of the parties is charged with a duty of public service, and the bargain relates to negligence in the performance of any part of its duty to the public, for which it has received or been promised compensation.''

The *Speroff case, supra,* was a case in which a bank sought to relieve itself of liability for negligence in failing to stop payment on a check as requested by a customer. The court held there was no consideration for such a contract and the same was against public policy. It was based upon considerations of the law merchant and the traditional duties of a bank towards its depositors. It is a far cry from such a relationship to that of a race track operator and his duties to those who enter stock races for prize money and to give the public patrons a thrill.

The case of *Hilleary* v. *Bromley, supra* (82 Ohio App., 219), has the following syllabus:

''Where a contractor lets the doing of certain work to a subcontractor and orally agrees to furnish the latter with good

safe equipment and such equipment is defective, causing injury to the latter, for which he brings action, it is not error for the court to withdraw from the consideration of the jury, a part of the contractor's exhibit wherein the subcontractor contractually assumed the risk of injuries resulting from his work and re leased the contractor from any claims for damages.''

The distinguishing features of that case are that (1) it is a bailment case upon which there are long lines of authority and (2) Bromley orally promised (page 223) to furnish the plaintiff good safe equipment. The court found that in any event the release did not go to that promise. It is, therefore, not authority under the facts of the instant cases. Consequently, we do not feel that the Supreme Court of Ohio has made any pronouncement which would interdict the conclusion arrived at by the trial court and in which we concur.

In our judgment there are forceful reasons why public policy does not require that such a release as that in the instant case be declared invalid. The considerations as to employer and employee, common carriers and public utilities are not applicable. It is common knowledge that stock car races on quarter and half-mile tracks are neither tests of speed nor endurance. They add nothing to the development of better machines. Old cars are used, which are expected to be cracked up for the edification of a blood-thirsty public who attend merely to see accidents happen. The drivers who enter these races know the perils involved and their popularity depends in a great measure on their ability to outsmash the other contestants. If the public were given the opportunity to turn thumbs up or thumbs down on a wreck driver, the situation could hardly be distinguished from that 2000 years ago in gladiator contests in a Roman coliseum.

In the *Bodnar case* herein it is claimed that the language of the release was not intended to cover a situation such as that described in the petition, where a rut developed in a track, so that in the 18th lap in the 8th race in which the plaintiff was engaged he wrecked his car. It is claimed that this was a latent defect not intended to be covered by the release. Certainly, the plaintiff having 17 laps in which to watch this rut develop, can hardly claim that this condition was latent. Again, no allega-

tions therein are made of willful or wanton misconduct. We can see no difference in law in the two cases.

The judgments are both affirmed.

*Judgments affirmed.*

McCLINTOCK, P. J., and McLAUGHLIN, J., concur.