TOTH et al., Appellants,

v.

TOLEDO SPEEDWAY, Appellee.

[Cite as *Toth v. Toledo Speedway* (1989), 65 Ohio App.3d 166.]

Court of Appeals of Ohio,
Lucas County.

No. L–89–053.

Decided Oct. 27, 1989.

*Arnold Gottlieb,* for appellants.

*John Borrell,* for appellee.

---

*Per Curiam.*

This matter is before the court on appeal from a judgment of the Lucas County Court of Common Pleas.

Plaintiffs-appellants, brothers John and Louis Toth, were injured July 27, 1986, while observing a stock car race held on property leased by defendant-appellee, Toledo Speedway. Appellants were observing the race from the

back of a pickup truck parked in the infield area, the "restricted area," when the truck was struck by a race car. Appellants gained access to the "restricted area" by signing a release form submitted to them by one of appellee's employees. The race car, operated, ironically, by John Toth's son, John, Jr., went out of control at the track's second turn, striking the truck and injuring appellants.

Appellants filed a complaint against appellee on June 5, 1987. Appellants alleged that appellee failed to maintain the premises in a reasonably safe condition, failed to erect adequate barriers and failed to provide a safe place to watch the race. Appellee filed a motion for summary judgment on October 11, 1988, alleging, *inter alia,* that appellants executed a valid waiver of liability and, accordingly, had expressly assumed the risk of personal injuries and/or damages. The trial court granted appellee's motion for summary judgment in an opinion and journal entry dated January 30, 1989. It is from that judgment that appellants have appealed, setting forth the following three assignments of error:

"A. Appellants did not execute a valid release that would allow appellee to escape liability.

"B. Appellants did not expressly assume the risk of injury.

"C. The appellee owed a duty to appellants since the doctrine of primary assumption of the risk does not apply."

In their first assignment of error, appellants argue that the release relied upon by appellee is invalid. Appellants assert that enforcement of the release violates public policy and that it was signed by appellants without knowledge of its purpose. As an alternative argument, appellants contend that, under the circumstances of this case, the essence of the substantive language of the document somehow prevents the exculpatory language from taking effect.

In setting forth the public policy considerations surrounding this release, appellants argue that at the time the release was executed, appellee possessed bargaining power superior to that of appellants. Appellants assert that a prospective admittee to the restricted area is unable to negotiate the terms of his admittance. Appellants argue that because they possessed unequal bargaining power and could not exclude the exculpatory language prior to accepting the agreement, the release is invalid and violates public policy. We disagree.

The record indicates that appellants were at the track approximately two and one-half hours prior to the time they executed the release and entered the pit area. By the very nature of auto racing in combination with the express

language of the release, when appellants chose to relocate to the restricted area, they became "participants" in the race. Further, appellants each testified that they intended to offer John, Jr. assistance during the race. The assistance was to be in the form of mechanical help and/or advice with each appellant attempting to assume a fairly active role in the outcome of the race.

In *French v. Special Services, Inc.* (1958), 107 Ohio App. 435, 8 O.O.2d 421, 159 N.E.2d 785, paragraph two of the syllabus, the Ashland County Court of Appeals held:

"An agreement between a participant in and the proprietor of a stock car race, whereby the former assumes the risk of injuries resulting from his participation in such event and releases the proprietor from any claims for damages, is not invalid as against public policy."

The *French* court also held that a stock car participant and a proprietor were free to contract so as to relieve the latter from liability for damages or injuries to the former except when caused by willful or wanton misconduct. *Id.* at paragraph one of the syllabus. The Supreme Court of Ohio has mandated that such contracts of indemnity executed to relieve one from the results of his purported negligence must be strictly construed. *Kay v. Pennsylvania RR. Co.* (1952), 156 Ohio St. 503, 46 O.O. 417, 103 N.E.2d 751. Further, an intention to provide such indemnification must be set forth in clear, unequivocal terms. *Id.*

Our analysis of the agreement executed by the parties in the case *sub judice* indicates that the intention to release appellee of "all liability" was expressed clearly and unequivocally in the release. We find that, on the basis of the express language, an ordinarily prudent and knowledgeable person should have known that by signing the agreement, he was contracting away all rights to hold the other party liable for negligence. Appellants have presented no evidence tending to establish that appellee's conduct was willful or wanton nor have they alleged that their own conduct should be evaluated by a standard other than that of a reasonably prudent person.

We find that public policy did not prevent these parties from contracting liability away, if that was their intention. Accordingly, under the facts presented, we find that there was a valid waiver of liability for any damages arising from appellee's alleged negligence.

Appellants also assert that the release is invalid because they were mistaken as to its contents at the time they signed it. Arguing that a meeting of the minds must occur between the parties in order to effectuate a release, appellants assert that such a determination is a question of fact for the jury.

The record in the instant case is quite clear as it pertains to the execution of the release. At the gate leading into the restricted area, appellants were handed the release. One of appellee's employees requested that appellants sign their names at the bottom of the form. Appellants admit that they signed the release without reading it. Appellants entered the restricted area immediately after signing the agreement.

This court is cognizant of the almost daily challenges the average person faces in regard to determining when it is prudent to affix his signature to a document. Nevertheless, the only method by which to evaluate the pertinent characteristics of a document is by reading it. In this case, the large printing at the top of the page stated: "RELEASE AND WAIVER OF LIABILITY AND INDEMNITY AGREEMENT." Even if appellants had not read beyond this headline, they would, nevertheless, have been notified of the document's purpose. Appellants assert that they did not read any part of the agreement and did not think it was a release of liability.

Our analysis of well-established theories of law as well as the basics of contract liability indicates that appellants' argument is without merit. In *McAdams v. McAdams* (1909), 80 Ohio St. 232, 240–241, 88 N.E. 542, 544, the Supreme Court of Ohio stated:

" * * * A person of ordinary mind cannot be heard to say that he was misled into signing a paper which was different from what he intended, when he could have known the truth by merely looking when he signed."

More importantly, if a person can read and is not prevented from reading what he signs and enters a contract, it will not do if when the person is " * * * * ' * * * called upon to respond to its obligations, to say that he did not read it when he signed it, or did not know what it contained. If this were permitted, contracts would not be worth the paper on which they are written; But such is not the law. A contractor must stand by the words of his contract; and, if he will not read what he signs, he alone is responsible for his omission. * * * ' " *Id.* at 241, 88 N.E. at 544. See, also, *McCuskey v. Budnick* (1956), 165 Ohio St. 533, 60 O.O. 493, 138 N.E.2d 386.

In other words, we find that the release agreement is not invalid or unenforceable merely because appellants either neglected to read it or chose not to read it prior to affixing their signatures to the document. In the absence of an allegation of fraud or mistake, appellants alone are responsible for omitting to read what they signed. *Dice v. Akron, Canton & Youngstown RR. Co.* (1951), 155 Ohio St. 185, 191, 44 O.O. 162, 165, 98 N.E.2d 301, 304, reversed on other grounds (1952), 342 U.S. 359, 72 S.Ct. 312, 96 L.Ed. 398, 47 O.O. 53.

Appellants rely on *Mut. Life Ins. Co. v. Svonavec* (1929), 32 Ohio App. 195, 166 N.E. 905, in support of their argument that the release is invalid. In *Svonavec,* the court stated:

" * * * A release, like every other contract entered into between parties, in order to be binding must be the result of a meeting of the minds between the parties. * * * " *Id.* at 198, 166 N.E. at 906.

The contract in *Svonavec* was held invalid on the basis of the fact that Barbara Svonavec was " * * * ignorant of the English language * * *. She claims that she did not understand the nature of the transaction and that at no time did she intend to execute such a release. * * * " *Id.* at 198, 166 N.E. at 906.

We find that *Svonavec* is distinguishable from the case *sub judice.* If appellants claimed to be "ignorant of the English language" or if they read the agreement and understood it to be something other than a release, whether there was a meeting of the minds would indeed be a question for the jury to answer after it heard the witnesses and had the opportunity to determine the credit to which their statements were entitled. *Id.* at 198, 166 N.E. at 906. Such a situation, however, has not been demonstrated in the instant case.

In the final portion of the first assignment of error, appellants argue that the substantive language within the document prohibits the exculpatory clause from taking effect. Appellants assert that the following statement precludes appellee from disclaiming liability:

" * * * [The undersigned] further agrees and warrants that if, at any time, he is in or about restricted areas and he feels anything to be unsafe, he will immediately advise the officials of such and will leave the restricted areas * * *."

We find this argument to be without merit.

It is apparent to this court that appellants' version of the facts surrounding their injuries deviates substantially from the record. Our analysis of appellants' testimony indicates that although they may have *believed* the area to be unsafe, appellants neither advised race officials of their concerns nor left the restricted area. Under the facts presented, however, this substantive language had virtually no effect on the exculpatory portion of the contract. Accordingly, we find that appellants failed to establish that reasonable minds could reach any conclusion other than that a valid release of liability was executed by the parties.

For the aforestated reasons, we find appellants' first assignment of error not well taken.

In their second assignment of error, appellants assert that it was erroneous for the trial court to grant summary judgment based upon a finding that appellants expressly assumed the risk of injury. Appellants argue that whether there was an express assumption of risk is a question of fact for the jury.

The Supreme Court of Ohio succinctly defined "express assumption of risk" in *Anderson v. Ceccardi* (1983), 6 Ohio St.3d 110, 6 OBR 170, 451 N.E.2d 780. The court stated:

"The foregoing merger of assumption of risk with contributory negligence is not intended to merge that category of assumption of risk known as 'express' assumption of risk. Express assumption of risk would arise where a person expressly contracts with another not to sue for any future injuries which may be caused by that person's negligence. * * * " *Id.* at 114, 6 OBR at 174, 451 N.E.2d at 783.

In view of our disposition of appellants' first assignment of error, we find that appellants contracted with appellee not to sue for future injuries caused by appellee's alleged negligence. Accordingly, we hold that appellants expressly assumed the risks associated with entrance to the restricted area at Toledo Speedway. For the aforestated reasons, we find appellants' second assignment of error not well taken.

In their third assignment of error, appellants argue that the doctrine of primary assumption of risk is not applicable to the instant case. Appellants assert that they did not make a voluntary choice to encounter a well-known risk; therefore, appellee had a duty to exercise reasonable care in the conduct of the race. The question of whether this duty was breached, thereby causing appellants' injuries, appellants argue, is a question of fact for the jury.

Primary assumption of risk concerns those " * * * cases where there is a lack of duty owed by the defendant to the plaintiff. This type of assumption of risk is typified by the baseball cases where a plaintiff is injured when a baseball is hit into the stands. * * * " *Id.*, 6 Ohio St.3d at 114, 6 OBR at 174, 451 N.E.2d at 783. Due to the fact that we have affirmed the trial court's determination that, by executing a release, appellants "expressly" assumed the risk of their injuries, it is unnecessary for us to determine whether the risks were also "primarily" assumed. Accordingly, we find appellants' third assignment of error moot and, therefore, not well taken.

On consideration whereof, the court finds substantial justice has been done the parties complaining, and judgment of the Lucas County Court of Common

**172**

Pleas is affirmed. It is ordered that appellants pay the court costs of this appeal.

*Judgment affirmed.*

CONNORS, GLASSER and ABOOD, JJ., concur.