84

BOWEN ET AL., APPELLANTS, *v.* KIL-KARE, INC. ET AL., APPELLEES.

[Cite as *Bowen v. Kil–Kare, Inc.* (1992), 63 Ohio St.3d 84.]

(No. 90–2187—Submitted November 12, 1991—Decided February 26, 1992.)

86

*Young, Pryor, Lynn & Jerardi* and *Michael J. Burdge,* for appellants.
*Isaac, Brant, Ledman & Becker* and *Donald L. Anspaugh,* for appellees.

DOUGLAS, J.  The primary issue in this case is whether the Exhibit A release entitles appellees to summary judgment on Bowen's negligence claim and the loss of consortium claims of Bowen's wife and children.  For the reasons that follow, we find that the Exhibit A release does not entitle appellees to summary judgment on these claims.

In the case at bar, the court of appeals found that Bowen, at his deposition, admitted to having signed the Exhibit A and B releases but that later, in his sworn affidavit, Bowen denied signing the releases.  The court of appeals determined that Bowen could not create a genuine issue of fact as to whether he signed the Exhibit A release by merely contradicting his own deposition testimony.  Therefore, the court of appeals ignored portions of Bowen's

affidavit and assumed, as fact, that Bowen had signed the Exhibit A release. On this basis,[4] the court of appeals held that appellees were entitled to summary judgment on Bowen's negligence claim and the loss of consortium claims of Bowen's wife and children.[5]

Civ.R. 56(C)[6] sets forth the standards which must be applied in determining whether appellees are entitled to summary judgment. Civ.R. 56(C) lists the types of evidentiary materials which a court is to consider in rendering summary judgment. Among the evidentiary materials listed in the rule are depositions and affidavits. Civ.R. 56(C) clearly indicates that the evidence considered on summary judgment must be construed in the light most favorable to the party defending the motion. Thus, appellants herein are entitled to have any conflicting evidence construed in their favor. As such, we find that the court of appeals clearly erred in ignoring portions of Bowen's affidavit which were favorable to appellants solely because of some perceived discrepancy between the affidavit and Bowen's earlier deposition testimony. Furthermore, a careful review of Bowen's deposition and affidavit reveals that there is no discrepancy in Bowen's testimony.[7]

---

4. In *Swift, supra,* the Court of Appeals for Cuyahoga County held that where a party defending a motion for summary judgment submits a favorable affidavit contradicting that party's earlier and unfavorable deposition testimony, the affidavit must be considered truthful for purposes of summary judgment absent a finding that the affidavit was made in bad faith.

5. The court of appeals apparently found that more than one release entitled appellees to summary judgment on these claims. However, since the judgment of the trial court was based solely on the validity of the Exhibit A release, we find that the judgment of the court of appeals must have been based solely on the validity of that release as well.

6. Civ.R. 56(C) provides, in part, that:
   " * * * Summary judgment shall be rendered forthwith if the pleading, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence in the pending case, and written stipulations of fact, if any, timely filed in the action, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule. A summary judgment shall not be rendered unless it appears from such evidence or stipulation and only therefrom, that reasonable minds can come to but one conclusion and that conclusion is adverse to the party against whom the motion for summary judgment is made, such party being entitled to have the evidence or stipulation construed most strongly in his favor. * * * "

7. In his deposition, Bowen admitted that his signature appears on the Exhibit A and B releases but denied having ever signed the documents. Bowen maintained that prior to the May 31, 1987 race, he was merely required to sign a blank sheet of paper along with a registration card. Bowen stated that this procedure was followed for every race that he entered at Kil–Kare Speedway. Bowen denied that the Exhibit A or B releases were required to be signed by him prior to any race conducted at Kil–Kare Speedway. In his affidavit, Bowen asserted that he never saw, signed, or was given an opportunity to read the Exhibit A release or any similar release prior to the commencement of his lawsuit against appellees. Thus, while Bowen has

The court of appeals determined, and we agree, that whether appellees were negligent in failing to timely stop the race is a disputed question of fact. However, the court of appeals held that the question concerning appellees' negligence was not material because Bowen signed the Exhibit A release. We disagree with this determination.

Applying the standards of Civ.R. 56(C), we find that the questions whether Bowen signed the Exhibit A release or was denied the opportunity to read the release are questions of fact which, for purposes of summary judgment, must be resolved in appellants' favor. Therefore, appellees are not entitled to summary judgment on the basis of the Exhibit A release since it must be assumed for purposes of summary judgment that Bowen never properly executed the release.

We note that appellants also seek our determination that the registration card release does not prevent them from recovering against appellees. However, the trial court specifically declined to address the ambiguity (if any) of the registration card release. The judgment of the trial court was based solely on the enforceability of the Exhibit A release. While it is true that the court of appeals' opinion repeatedly refers to "releases," the question whether the registration card release was enforceable was not properly before the court of appeals.[8] We, therefore, decline to pass judgment on this issue.

Appellants also contend that the Exhibit A release does not preclude them from recovering against appellees for willful or wanton misconduct. According to appellants, the evidence indicates that appellees' failure to timely stop the race was willful or wanton. Therefore, appellants argue that summary judgment should not have been granted to appellees on the basis of the Exhibit A release.

With respect to this issue, the trial court held that the evidence does not support appellants' allegations of willful and wanton misconduct "[g]iven Bowen's knowledge of the risks involved and his assumption of those risks * * *." On appeal to the court of appeals, the issue of willful or wanton misconduct was briefed and the trial court's ruling on the issue was assigned as error. In spite of this fact, the court of appeals failed to address the issue. See App.R. 12(A). Under these circumstances, we would normally remand

---

acknowledged that his signature appears on the Exhibit A and B releases, Bowen has consistently maintained that he never signed the documents.

Because of our finding that there was no discrepancy between Bowen's deposition testimony and his affidavit testimony, this case, on that issue, is not in conflict with *Swift, supra.* Therefore, other than our discussion, *supra,* on the issue, we make no further comment.

8. See fn. 5, *supra.*

this cause to the court of appeals for compliance with App.R. 12(A). However, we have just determined that appellees are not entitled to summary judgment on the basis of the Exhibit A release because a question of material fact remains in dispute as to whether Bowen properly executed the release. Therefore, remanding this cause to the court of appeals for a determination of whether yet another reason exists why appellees cannot obtain summary judgment on the basis of the Exhibit A release might serve no purpose but to prolong what has already become protracted litigation between the parties to this appeal.

Upon remand, the question concerning the release and willful or wanton misconduct will surely again arise between the parties to this appeal. Therefore, we address appellants' arguments.

It has generally been held that a participant in a stock-car race and the proprietor of such activity are free to contract in such a manner so as to relieve the proprietor of responsibility to the participant for the proprietor's negligence, but not for the proprietor's willful or wanton misconduct. See, e.g., Seymour v. New Bremen Speedway, Inc. (1971), 31 Ohio App.2d 141, 146, 60 O.O.2d 236, 239, 287 N.E.2d 111, 115–116, and French v. Special Services, Inc. (1958), 107 Ohio App. 435, 8 O.O.2d 421, 159 N.E.2d 785. See, also, Cain v. Cleveland Parachute Training Ctr. (1983), 9 Ohio App.3d 27, 9 OBR 28, 457 N.E.2d 1185. Reviewing all the evidence in the record before us in a light most favorable to appellants, as required by Civ.R. 56(C), the facts of this case pertaining to the nature of appellees' conduct are as follows.

Bowen's automobile was stopped on the racetrack in a hazardous position. The flagman looked directly at the disabled automobile and Bowen motioned to the flagman for help. However, the flagman allowed the race to continue contrary to the rules of the race and contrary to the normal practice at Kil–Kare Speedway. With approximately one hundred twenty-four laps of racing yet to be completed, Bowen sat stranded in his automobile while other automobiles sped past him reaching speeds up to sixty miles per hour. Eventually, Bowen's automobile was rear-ended.

We find that the Exhibit A release, if properly executed, could only relieve appellees of liability to Bowen for negligence, but not for appellees' willful or wanton misconduct. Viewing the evidence in a light most favorable to appellants, we believe that reasonable minds can reach differing conclusions as to whether appellees' failure to timely stop the race, in clear violation of the rules of the event, was either negligent or willful and wanton. Therefore, appellees were not entitled to summary judgment on the basis of the Exhibit A release.

With respect to the trial court's conclusion that Bowen impliedly assumed the risk of his injuries, we cannot conclude that Bowen, by participating in the event, impliedly assumed the risks of any injury caused by appellees' failure to comply with the rules of the event, or that Bowen's assumption of the risk (if any) would bar or limit his recovery under R.C. 2315.19, Ohio's comparative negligence statute. See *Anderson v. Ceccardi* (1983), 6 Ohio St.3d 110, 6 OBR 170, 451 N.E.2d 780. These issues may be resolved at trial.

Next, appellants argue that the Exhibit A release does not bar the loss of consortium claims of Bowen's wife and children even if Bowen properly executed the Exhibit A release and even if the Exhibit A release precludes Bowen from recovery on his negligence claim. We first address appellants' argument as it relates to the consortium claim of Brenda M. Bowen, Bowen's wife.

The trial court and court of appeals held that Brenda Bowen's loss of consortium claim could be defeated by appellees' defense that the Exhibit A release precluded William Bowen from recovering against appellees. As such, the trial court and court of appeals clearly viewed Brenda Bowen's loss of consortium claim as a purely "derivative" claim, meaning that the success of Brenda's loss of consortium claim was entirely dependent upon the success of her husband's negligence claim. However, this view is not consistent with our previous pronouncements concerning the independent nature of a claim for loss of spousal consortium.

In Ohio, it is well established that a wife has a cause of action for damages for loss of consortium against a person who, either intentionally or negligently, injures her husband and thereby deprives her of the love, care and companionship of her husband. *Clouston v. Remlinger Oldsmobile Cadillac, Inc.* (1970), 22 Ohio St.2d 65, 74, 51 O.O.2d 96, 101–102, 258 N.E.2d 230, 235. Likewise, a husband has a cause of action for injuries caused his wife by a person who, thereby, deprives the husband of the love, care and companionship of his wife. *Id.* "Consortium" consists of society, services, sexual relations and conjugal affection, which includes companionship, comfort, love and solace. *Id.* at paragraph three of the syllabus.

In *Flandermeyer v. Cooper* (1912), 85 Ohio St. 327, 336–337, 98 N.E. 102, 104, this court recognized that the right of a wife to the consortium of her husband is a personal right. We held that a wife's claim for loss of consortium is her *separate property* which grows out of an injury to her *personal rights* and that she may pursue the claim in her own name. *Id.* See, also, *Westlake v. Westlake* (1878), 34 Ohio St. 621. In *Clouston, supra,* we stated that "[t]he 'gist' of the wife's action for loss of the consortium of her husband against a defendant who either intentionally or negligently

causes injury to her husband is the direct hurt which she has suffered by reason of the loss of her husband's society, services, sexual relations and conjugal affection which includes companionship, comfort, love and solace." (Emphasis added.) *Id.,* 22 Ohio St.2d at 72, 51 O.O.2d at 100, 258 N.E.2d at 234. We have also observed, on a previous occasion, that a wife's loss of consortium claim is not necessarily defeated by a valid defense to her husband's claim against the tortfeasor. See *Dean v. Angelas* (1970), 24 Ohio St.2d 99, 53 O.O.2d 282, 264 N.E.2d 911.

Our review of the foregoing authorities demonstrates that Ohio has long recognized, and properly so, an independent right of the wife to be compensated for her loss of consortium. The right is her separate and personal right arising from the damages she sustains as a result of the tortfeasor's conduct. The right of the wife to maintain an action for loss of consortium occasioned by her husband's injury is a cause of action which belongs to her and which does not belong to her husband.

In the case at bar, we find that the Exhibit A release does not defeat Brenda Bowen's claim against appellees for loss of consortium even if her husband properly executed the release and even if the release bars him from recovering against appellees. Brenda's claim is a separate and independent claim against appellees for the damages she sustained as a result of appellees' conduct, and it is not a claim that her husband could effectively release. Accord *Arnold v. Shawano Cty. Agricultural Society* (1983), 111 Wis.2d 203, 330 N.W.2d 773, and *Barker v. Colorado Region–Sports Car Club of America, Inc.* (1974), 35 Colo.App. 73, 532 P.2d 372. See, also, Annotation (1984), 29 A.L.R.4th 1200, 1201 ("Where the action for loss of consortium is seen as purely derivative of the original cause of action for the injury, it has been held that once the original cause of action has been released, the action for loss of consortium is also barred. However, the more prevalent view seems to be that the loss of consortium suit is not barred as it is a separate and independent cause of action which is the property of the spouse and cannot be controlled by the injured person."). As a simple matter of contract law, the release, as a contract, could only bar Brenda's claim if she was a party to the agreement. See, *e.g., Arnold, supra,* 111 Wis.2d at 214–215, 330 N.W.2d at 779 (Husband's signing exculpatory contract to participate in automobile race does not release his wife's right to pursue a loss of consortium claim. Only if she signed the release would it bind her.).

Accordingly, we hold that an action for loss of consortium occasioned by a spouse's injury is a separate and distinct cause of action that cannot be defeated by a contractual release of liability which has not been signed by the spouse who is entitled to maintain the action. In so holding, we recognize

that a claim for loss of consortium is derivative in that the claim is dependent upon the defendant's having committed a legally cognizable tort upon the spouse who suffers bodily injury. For instance, in *Schiltz v. Meyer* (1971), 32 Ohio App.2d 221, 61 O.O.2d 247, 289 N.E.2d 587, paragraph one of the syllabus, the court held that where a cause of action for personal injury by one spouse is not a cause of action recognized in Ohio, an action for loss of consortium by the other spouse premised upon the injurious occurrence is, likewise, barred. Our holding today does not affect that determination.

Furthermore, our holding today does not affect the apportionment of fault under R.C. 2315.19. If the spouse who suffers personal injury contributed to his or her injury, the contributory fault of that spouse may be imputed to the spouse claiming loss of consortium arising out of the injurious occurrence for purposes of limiting or defeating recovery on the loss of consortium claim. Accord *Arnold, supra.* See, also, *Lee v. Colorado Dept. of Health* (Colo. 1986), 718 P.2d 221, 230–233. In the case at bar, William Bowen's noncontractual assumption of the risk (if any) is a viable defense to Brenda Bowen's loss of consortium claim and may limit or defeat her recovery on that claim under R.C. 2315.19. However, we have previously indicated that the questions whether Bowen impliedly assumed the risk of his injuries by participating in the event, and/or the extent to which he contributed to his own injuries, are questions of fact to be determined on remand.

With respect to the loss of "consortium" claims by Bowen's minor children premised upon their father's personal injuries, we note that this court has yet to recognize that children may maintain such an action for loss of "parental consortium." The parties to this appeal have not sought our determination whether such a cause of action exists in Ohio, and we have received no briefing or argument on the issue but we do note, in passing, our discussion, *supra*, concerning the consortium claim of Brenda Bowen.

The trial court and court of appeals held only that appellees were entitled to summary judgment on the children's claims for loss of parental consortium on the basis of the release(s). Our determination with regard to the enforceability of the release necessitates that this cause be remanded to the trial court for further proceedings. On remand, the trial court may properly consider whether a child can maintain a cause of action for loss of parental consortium against a tortfeasor who negligently or intentionally injures the child's parent. We are aware of the 1964 case of *Kane v. Quigley* (1964), 1 Ohio St.2d 1, 30 O.O.2d 1, 203 N.E.2d 338. We are also aware, however, of the 1985 case of *Leach v. Newport Yellow Cab, Inc.* (S.D.Ohio 1985), 628 F.Supp. 293, 300–304, affirmed (C.A.6, 1987), 815 F.2d 704. Further, our current research reveals that the Supreme Courts of a number of states have recognized an action by

children for loss of parental consortium against a tortfeasor who injures the child's parent or parents,[9] and that the Supreme Courts of a number of other states have expressly declined to recognize such an action.[10] The propitious time to review this issue is when it is properly presented to us.

The final issue before us is whether the court of appeals correctly determined that appellees were not entitled to summary judgment on the negligent infliction of emotional distress claims by Bowen's wife and children. We agree with the court of appeals' determination that since appellees never moved for summary judgment on the negligent infliction of emotional distress claims of Bowen's wife and children, appellees were not entitled to summary judgment on these claims. This conclusion is merely a logical extension of our holding in *Marshall v. Aaron* (1984), 15 Ohio St.3d 48, 15 OBR 145, 472 N.E.2d 335, syllabus, and is supported by our holding in *Mitseff v. Wheeler* (1988), 38 Ohio St.3d 112, 526 N.E.2d 798, syllabus.

In conclusion, appellees were not entitled to summary judgment on any of the claims set forth in appellants' complaint. Accordingly, we affirm the judgment of the court of appeals in part and we reverse it in part. We order that appellants' complaint be reinstated and we remand this cause to the trial court for further proceedings consistent with this opinion.

> *Judgment affirmed in part,*
> *reversed in part*
> *and cause remanded.*

SWEENEY and RESNICK, JJ., concur.

H. BROWN, J., concurs in the syllabus and judgment.

---

9. See, *e.g., Hibpshman v. Prudhoe Bay Supply, Inc.* (Alaska 1987), 734 P.2d 991; *Villareal v. State Dept. of Transp.* (1989), 160 Ariz. 474, 774 P.2d 213; *Ferriter v. Daniel O'Connell's Sons, Inc.* (1980), 381 Mass. 507, 413 N.E.2d 690; *Berger v. Weber* (1981), 411 Mich. 1, 303 N.W.2d 424; *Williams v. Hook* (Okla.1990), 804 P.2d 1131; *Reagan v. Vaughn* (Tex.1990), 804 S.W.2d 463; *Hay v. Medical Ctr. Hosp. of Vermont* (1985), 145 Vt. 533, 496 A.2d 939; *Ueland v. Reynolds Metals Co.* (1984), 103 Wash.2d 131, 691 P.2d 190; *Belcher v. Goins* (W.Va.1990), 400 S.E.2d 830; *Theama v. Kenosha* (1984), 117 Wis.2d 508, 344 N.W.2d 513; *Nulle v. Gillette–Campbell Cty. Jt. Powers Fire Bd.* (Wyo.1990), 797 P.2d 1171.

10. See, *e.g., Gray v. Suggs* (1987), 292 Ark. 19, 728 S.W.2d 148; *Lee v. Colorado Dept. of Health* (Colo.1986), 718 P.2d 221; *Zorzos v. Rosen* (Fla.1985), 467 So.2d 305; *Dearborn Fabricating & Engineering Corp., Inc. v. Wickham* (Ind.1990), 551 N.E.2d 1135; *Schmeck v. Shawnee* (1982), 231 Kan. 588, 647 P.2d 1263; *Durepo v. Fishman* (Me.1987), 533 A.2d 264; *Salin v. Kloempken* (Minn.1982), 322 N.W.2d 736; *Russell v. Salem Transp. Co., Inc.* (1972), 61 N.J. 502, 295 A.2d 862; *Vaughn v. Clarkson* (1989), 324 N.C. 108, 376 S.E.2d 236; *Morgel v. Winger* (N.D.1980), 290 N.W.2d 266; and *Norwest v. Presbyterian Intercommunity Hosp.* (1982), 293 Ore. 543, 652 P.2d 318.

MOYER, C.J., concurs in the syllabus but dissents to the judgment.

HOLMES and WRIGHT, JJ., concur in part and dissent in part.

WRIGHT, J., concurring in part and dissenting in part.

I

I concur in the majority's conclusion that the trial court erred in granting summary judgment on appellants' claim that appellees' conduct was willful and wanton. For that reason I concur that this action should be remanded to the trial court. I also agree that the court of appeals was correct in determining that appellees were not entitled to summary judgment on the claims of negligent infliction of emotional distress, and with the position expressed in footnote 7 that no conflict exists between this action and *Swift v. Two Hundred Place* (Nov. 13, 1986), Cuyahoga App. No. 51320, unreported, 1986 WL 12867. I cannot, however, concur in the syllabus law propounded by the majority, or the remainder of its opinion, which in my view is dicta that is not only unnecessary, but also unsound.

II

The most significant problem with the opinion is the majority's unwillingness to apply the proper standard of review in summary-judgment actions. In *Wing v. Anchor Media, Ltd. of Texas* (1991), 59 Ohio St.3d 108, 570 N.E.2d 1095, we adopted the methodology set forth by the United States Supreme Court in *Celotex v. Catrett* (1986), 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265, requiring the nonmoving party, in response to a summary judgment motion, to produce evidence on those issues for which it bears the burden of production. Had the majority properly applied the *Celotex* standard to the case at bar, it would have discovered that appellants have not produced sufficient evidence to avoid summary judgment on the negligence and loss-of-consortium issues.

The majority declares that appellant Bowen's affidavit creates questions of fact that, "for purposes of summary judgment, must be resolved in appellants' favor." What the majority misses in its reading of Civ.R. 56(C) is that a *genuine* issue of material fact must be raised in order to defeat a motion for summary judgment. No such issue has been raised through appellant's affidavit here.

Bowen's deposition testimony clearly indicates his acknowledgement that the signatures on the releases, Exhibits A and B, appear to be his. His affidavit amounts to no more than a denial that he ever signed those releases, a position equivalent to that maintained by appellants in their complaint. In

the affidavit, Bowen presents no explanation why *his* signatures appear on releases he claims he never saw or had an opportunity to review. Although there is, by implication, a suggestion that Bowen's signatures may have been procured fraudulently, that suggestion standing alone is insufficient to create a genuine, and thus triable, issue of fact. As announced by the United States Supreme Court in *Anderson v. Liberty Lobby, Inc.* (1986), 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202, summary judgment may be granted "[i]f the evidence is merely colorable, * * * or is not significantly probative * * *." *Id.* at 249, 106 S.Ct. at 2511, 91 L.Ed.2d at 212. "[T]he mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment * * *." *Id.* at 247–248, 106 S.Ct. at 2510, 91 L.Ed.2d at 211. Our adoption of the *Celotex* standard implicitly incorporated this standard as well, and we should certainly not be reluctant to apply it to this set of facts.

Thus, I would uphold the court of appeals' determination that the trial court properly entered summary judgment on the issue of negligence. Appellants did not carry their burden, under Civ.R. 56, to rebut the evidence of releases containing Bowen's signatures. The unrebutted releases clearly bar his negligence claims as a matter of law.

## III

As to the loss-of-consortium claims, I would also uphold the judgment below. It has long been accepted as Ohio law that loss-of-consortium claims are derivative claims, and thus a defense to the underlying action generally constitutes a defense to the loss-of-consortium claims. See *Schiltz v. Meyer* (1971), 32 Ohio App.2d 221, 61 O.O.2d 247, 289 N.E.2d 587, affirmed on other grounds (1972), 29 Ohio St.2d 169, 58 O.O.2d 391, 280 N.E.2d 925. The only exception to this rule can be found in the narrow circumstance where the underlying tort claim is barred by a statute of limitations that is shorter than the statute of limitations for a loss-of-consortium claim. See *Dean v. Angelas* (1970), 24 Ohio St.2d 99, 53 O.O.2d 282, 264 N.E.2d 911. That exception, of course, is not applicable here.

The majority appears to go out of its way to create new law in order to preserve appellants' loss-of-consortium claims contrary to the undeniable tradition that such claims are inextricably linked to the underlying tort action.[11] By invoking law from a scattering of other jurisdictions and declar-

---

11. Contrary to the view of the majority, only a minority of states have adopted the approach it urges here. A broad majority of states views loss-of-consortium claims as derivative and not independent. See *McCoy v. Colonial Baking Co., Inc.* (Miss.1990), 572 So.2d 850 (analyzing on

ing that a contractual release cannot bar those who are not parties to the release, the majority ignores the historical underpinnings of loss-of-consortium claims.[12]

In this state and elsewhere, the right to consortium is a right that grows out of marriage, is incident to marriage, and cannot exist without marriage. *Haas v. Lewis* (1982), 8 Ohio App.3d 136, 137, 8 OBR 192, 193, 456 N.E.2d 512, 513. The nature of the loss-of-consortium action is "to grant redress for interference with marital rights." *Id.; Baltimore & Ohio RR. Co. v. Glenn* (1902), 66 Ohio St. 395, 398, 64 N.E. 438, 439. Thus, when one spouse waives her or his rights to recovery in the event of injury caused by the negligence of another, she or he also waives by implication the other spouse's right to recovery for interference with their jointly held marital rights.

The reasoning of the majority appears to be untenable in the law and unworkable in the market place. Those who operate recreational or other activities where there exists the potential for injury will be forced to demand the signature of the non-participating spouse on a release of his or her loss-of-consortium claims before the other spouse will be allowed to participate. This will place a heavy burden upon providers of such activities, and more importantly, one spouse's freedom to participate will be subject to the veto of the

---

state-by-state basis the status of loss-of-consortium claims). In one of these majority states, Maryland, a court of appeals has held in an action involving an automobile dragway accident that a release signed by the injured spouse is effective against the other spouse on a loss-of-consortium claim if it is effective to defeat the underlying tort action. *Winterstein v. Wilcom* (1972), 16 Md.App. 130, 293 A.2d 821. Accord *Byrd v. Matthews* (Miss.1990), 571 So.2d 258 (a wife's loss-of-consortium claim based upon her husband's raceway accident is precluded by husband's assumption of risk).

12. It must be noted that one of the cases cited by the majority, *Barker v. Colorado Region–Sports Car Club of America, Inc.* (1974), 35 Colo.App. 73, 532 P.2d 372, may no longer reflect the law in Colorado. More recently, the Supreme Court of Colorado in *Lee v. Colorado Dept. of Health* (1986), 718 P.2d 221, unequivocally held that loss-of-consortium claims are derivative claims. As that court noted, " * * * the marital relationship gives rise to a compendium of mutual interests which arise from and are unique to that relationship. The law has always sought, whenever practicable, to recognize this unity of interest between husband and wife and to preserve marital harmony. If a claim for loss of consortium were viewed as totally independent of the other spouse's personal injury claim, there would be no reason to preclude one spouse from suing another for loss of consortium or to prohibit the primary tortfeasor sued in a consortium claim from impleading the spouse who suffered the personal injuries. * * * Placing one spouse in an adversarial relationship to the other over the latter's claim for loss of consortium introduces an element of legal conflict into the marriage that, far from contributing to marital harmony, will most likely have the effect of fostering discord between the parties. The derivative approach avoids much of this potential for conflict * * *." *Id.* at 232. See, also, *id.* at 231, footnote 9 (describing the *independent* approach as permitting suit "even if the spouse suffering personal injury * * * gave a release to the tortfeasor on the personal injury claim * * * ").

other. Marital disharmony aside, the result reached by the majority is clearly contrary to the common-law tradition that underlies the loss-of-consortium cause of action. For these reasons, I cannot join in the portion of the majority opinion concerning the effect of a release upon derivative loss-of-consortium claims.

## IV

Finally, I am compelled to address the portion of the majority opinion that invites the trial court to consider whether "children may maintain * * * an action for loss of 'parental consortium.'" Contrary to the assertions of the majority, there can be no debate whether such a cause of action is recognized in this state. At least two courts of appeals in this state have recognized that this court's ruling in *Kane v. Quigley* (1964), 1 Ohio St.2d 1, 30 O.O.2d 1, 203 N.E.2d 338, has effectively foreclosed the maintenance of such actions. See *Masitto v. Robie* (1985), 21 Ohio App.3d 170, 21 OBR 181, 486 N.E.2d 1258, and *Sanders v. Mt. Sinai Hospital* (1985), 21 Ohio App.3d 249, 21 OBR 292, 487 N.E.2d 588. See, also, *Gibson v. Johnston* (App.1956), 75 Ohio Law Abs. 413, 144 N.E.2d 310 (a pre-*Kane* decision rejecting loss of parental consortium). Because I do not view this issue as one of first impression in this state, I would not suggest to the trial court that it may act in any manner on this issue other than to reject appellants' loss of parental consortium claims as a matter of law.[13]

## V

For all the foregoing reasons, I would affirm the court of appeals on all the propositions of law advanced by the appellants, with the lone exception that I would reverse the trial court's grant of summary judgment on the issue of appellees' alleged willful and wanton conduct.

HOLMES, J., concurs in the foregoing opinion.

---

13. The majority's citation of *Leach v. Newport Yellow Cab, Inc.* (S.D.Ohio 1985), 628 F.Supp. 293, does not persuade me to the contrary. Although the federal district court in that case concluded that a loss of parental consortium claim would be recognized by this court, I remain convinced that the Ohio General Assembly should make the determination whether such a cause of action should become part of our statutory law. I am equally convinced that only this court's opinion should be considered as the final authority as to whether such claims are recognized as a matter of our common law. Indeed, with respect to wrongful-death actions, the legislature has permitted loss of parental consortium claims, R.C. 2125.02(B)(3), but has not chosen to extend the availability of those claims to negligence actions that result merely in injury. As a matter of sound judicial policy, neither we, nor the trial court, should attempt to "legislate" a new common-law cause of action for loss of parental consortium.