JOURNAL ENTRY AND OPINION
These are consolidated appeals from a jury verdict following trial before Judge Janet R. Burnside and award of prejudgment interest in favor of appellees Paul and Jean Urban. Paul Urban sustained personal injuries when a truck operated by appellant Goodyear Tire Rubber Co. ("Goodyear") ran over his foot. Goodyear claims that erroneous jury instructions prejudiced the verdict and it was error to deny its motions for a new trial, judgment notwithstanding the verdict, or directed verdict, and that an award of prejudgment interest is unwarranted. We disagree and affirm.
The record reveals the following: On November 14, 1995, Urban, then thirty-one years old and employed as a mechanic for United Parcel Service (UPS), was laying on a creeper while working under a semi-tractor at the UPS garage in Middleburg Heights. A truck driven by a Goodyear employee had delivered tires to the garage and, while leaving, ran over Urban's right foot. When Urban felt the pain in his foot he turned his body to the right, the creeper rolled out from under him and he further twisted his back. He was taken to a hospital, x-rays failed to reveal any fratures in the foot and he was discharged. When he returned to work he was placed on light duty assignments involving paperwork for approximately the next week to ten days. Within two days of the incident, Urban experienced low back pain that he attributed to the twisting of his body. He did not seek medical treatment at that time because he hoped the pain would go away on its own. Because his job required heaving lifting, Urban had experienced soreness in his back before but the soreness had always gone away and he had never sought treatment. Despite the fact that this pain was different than any previous back complaint and involved some tingling in his leg, he claimed he continued to hope the pain would go away. When the pain worsened on November 28, 1995, he went to a hospital emergency room where he was diagnosed as having a low back strain. Urban was unable to work for ten days and began to receive ongoing treatment for his back condition. He then resigned from his part-time job with Boston Road Automotive because he was no longer able to endure the strain of going to a second job after working a full day at UPS.
Urban's back condition was eventually diagnosed as a herniated disk. His physician, Dr. Jonathan Landsman, testified that surgery could correct the problem, but that he preferred to attempt other more conservative modalities before resorting to surgery. Urban was also hesitant to undergo surgery and underwent a number of therapy sessions with different physicians but, when the therapy was unsuccessful, he began to seriously consider the surgery. Dr. Landsman agreed that the failure of other therapies increased the likelihood that Urban would have to resort to surgery to obtain relief.
Urban also claimed that his back condition changed his once active lifestyle; he was no longer able to play golf or engage in other activities, he was unable to help his wife take care of their children, their intimate relations were affected, and she had to put up with his sometimes unpleasant moods caused by back pain.
On November 13, 1997, the Urbans filed a complaint against Goodyear and a John Doe employee alleging his foot and back injuries, permanent injury and his wife's loss of consortium. Goodyear answered and asserted affirmative defenses including assumption of the risk and contributory negligence.
Prior to trial, Goodyear stipulated its employee's negligence. At trial it admitted liability for Urban's foot injury and did not dispute that he was suffering from a herniated disk but denied that the truck incident caused his back condition. Its medical expert, Dr. Scott Singer, testified that in his opinion Urban could not have sustained a herniated disc in the way the accident was described. According to Singer, Urban's twisting did not occur with sufficient force to result in such an injury for if it had, Urban would have complained of the pain immediately, not two days afterward. Dr. Landsman testified that some patients do not immediately notice a secondary injury, and that Urban might not have recognized the pain in his back because the primary point of injury was his foot.
Goodyear relied on a notation in the November 28, 1995, emergency room records, the day Urban first sought medical help for his back pain, indicating that he stated that his back pain began a week earlier "after taking out tires from truck." The same records contained notes that indicated Urban related the back pain to the November 14th incident with his foot and Urban testified that he never removed tires from delivery trucks, and had done no heavy lifting between November 14th and November 28th. The Goodyear driver testified that Urban did not remove any tires from the truck on November 14th.
The evidence also showed that Urban had been on light duty for much, if not all of the period from November 14 to November 28, and was on crutches for part of that time. Urban's lawyer contended that the "taking tires from truck" notation was mistaken, or the product of some confusion due to the fact that Urban was run over by a truck that had been delivering tires.
Urban presented evidence that he lost $4,233 in wages from UPS because of lost time due to the foot and back conditions, and calculated a loss of $35,700 in lost wages from the part-time job at Boston Automotive, based on twenty-five hours per week at $8.50 per hour for the period between November 1995 and April 1999, the time of trial. Urban also calculated a present value of $137,000 loss reflecting his inability to continue the part-time work over the next twenty years, and estimated that he would lose another $6,800 in wages at UPS for time missed after undergoing back surgery. Urban presented medical bills totaling approximately $4,900, and evidence that future back surgery would cost between $10,000 and $20,000. Urban requested a total of $150,000 for pain and suffering, $50,000 in hedonic damages, and $25,000 for Mrs. Urban's loss of consortium. Goodyear argued that the evidence showed only that the accident caused Urban's foot injury and that the total medical bills and lost wages for that injury came to $3,000.
Goodyear moved for a partial directed verdict on Mrs. Urban's claim for loss of consortium both at the close of the Urbans' case and at the close of all evidence, arguing insufficient evidence because she had never testified. Both motions were denied. Goodyear also requested a jury instruction on intervening/ superseding cause and objected to its omission, arguing that the November 28th records were evidence that Urban's back injury was caused by lifting truck tires, and not by twisting his back while his foot was pinned under a truck tire.
On April 16, 1999, the jury returned a general verdict awarding Urban $100,000, and Mrs. Urban $5,000 for the loss of consortium claim. Judgment on that verdict was entered on April 27, 1999, Goodyear filed motions for new trial or judgment notwithstanding the verdict, both of which were denied on June 15, 1999.
On April 29, 1999, the Urbans filed a motion for prejudgment interest, and on July 14, 1999 a hearing was held that revealed Goodyear refused to negotiate any settlement for Urban's back condition and had made a single offer to settle the case for $3,500, while the Urbans requested $75,000. The judge granted the motion on September 27, 1999, and awarded the Urbans 10% interest per annum on their judgment amounts from November 14, 1995, the date of the injury.
Goodyear asserts six assignments of error. The first assignment states:
 I. THE TRIAL COURT ABUSED ITS DISCRETION IN FAILING TO GRANT THE APPELLANT'S MOTION FOR A NEW TRIAL.
Goodyear makes three arguments to support its contention of its right to a new trial; the verdict was against the weight of the evidence, the jury was influenced by passion or prejudice and, the verdict was contrary to law. As the third argument relies on claims addressed in other assignments of error, we will address that portion later.
Civ.R. 59(A) provides the bases on which a judge may grant a new trial. The rule states, in relevant part:
 A new trial may be granted to all or any of the parties and on all or part of the issues upon any of the following grounds:
* * *
 (4) Excessive or inadequate damages, appearing to have been given under the influence of passion or prejudice;
* * *
 (6) The judgment is not sustained by the weight of the evidence; * * *
We review the denial of a motion for a new trial on these
grounds for abuse of discretion. Wagner v. Roche Laboratories (1999),85 Ohio St.3d 457, 460, 709 N.E.2d 162, 165. A judge abuses his discretion when he makes a ruling "so palpably and grossly violative of fact or logic that it evidences not the exercise of will but the perversity of will, not the exercise of judgment but the defiance of judgment, not the exercise of reason but instead passion or bias." Nakoffv. Fairview Gen. Hosp. (1996), 75 Ohio St.3d 254, 256, 662 N.E.2d 1, 3. Because a trial judge is in a superior position to weigh the credibility of evidence and assess the influence of passion or prejudice upon the jury, we extend considerable discretion to his rulings on these issues.See, e.g., Osler v. Lorain (1986), 28 Ohio St.3d 345, 351, 504 N.E.2d 19,24 (a judge has supervisory capacity over proceedings).
When assessing the weight of the evidence, a judge reviews the quality and credibility of the evidence presented. Rohde v. Farmer (1970)23 Ohio St.2d 82, 262 N.E.2d 685, paragraph 3 of the syllabus. A new trial is warranted only if he concludes that the jury's verdict resulted in manifest injustice. Id. Goodyear argues that the evidence did not support Urban's claim that his back injury was causally related to the truck accident, because Dr. Landsman failed to state, with a reasonable degree of medical certainty, that Urban's herniated disk was the result of the November 14, 1995, accident. This argument is contradicted by the record because that opinion was given.
Goodyear also argues that the $100,000 damages award was unsupported by the evidence because back surgery sometime in the future was only one option for treating Urban's back complaints, but not a certainty. We also reject this argument. Dr. Landsman testified that surgery is a more likely alternative as other therapies proved insufficient, and Urban testified that he believed he would undergo surgery because, after three years of various types of therapy, he was still experiencing substantial pain.
Goodyear next claims that Urban remained able to do his work at UPS with no noted absences due to his back complaints except for brief periods in November-December 1995 and December 1997, to support its position that the jury's verdict cannot stand in light of this evidence. It does not state whether it believes this evidence undermined the entire verdict or simply the amount of damages. The evidence does not undermine the verdict if, as Urban testified, he was able to continue working at UPS, but experienced pain and needed help with some physically demanding jobs. Goodyear's own witness, Urban's supervisor, Sam Petrash, testified that Urban had difficulty at work and was often in pain and, moreover, Goodyear did not dispute the existence of Urban's back condition at trial, only its cause. Evidence of Urban's ability to work, therefore, would be irrelevant to the cause of the back problems, and must have been offered to mitigate damages. That Urban was able to continue to work does not undermine the jury's damages award; there was ample testimony about his pain, his need for assistance at work, ongoing therapies and likelihood of surgery. It was not an abuse of discretion to find that the jury's verdict was not against the manifest weight of the evidence.
When assessing a claim that passion or prejudice unfairly affected a jury's verdict, the judge must determine whether incompetent or inappropriate evidence was admitted, whether it affected the jury's determinations, and whether the resulting damages award is so unreasonably excessive or inadequate that it shocks the sensibilities. Kluss v. Alcan Aluminum Corp. (1995), 106 Ohio App.3d 528, 539,666 N.E.2d 603, 610.
Goodyear cites a laundry list of complaints that, it contends, unfairly cast it as a villain at trial, starting with jury voir dire and continuing through witness testimony, the lawyers' questions to witnesses, and closing argument. Because of such characterization, Goodyear claims the jury was induced to render an unfair verdict. According to Goodyear the $105,000 verdict is disproportionate to the Urbans' actual damages, to wit, medical bills of less than $5,000. Such an argument ignores the remaining bases of the Urbans' damages.
The evidence plainly showed that Urban missed some work at UPS as a result of his back condition, and that he had stopped working his second job at Boston Automotive because of the problem. Moreover, Urban's back pain and disability was essentially uncontroverted, as Goodyear itself presented a witness who testified to observing difficulty and pain. Simply put, so long as the jury found that the November 14, 1995 accident proximately caused Urban's back condition, it reasonably could assess $105,000 in damages based on that injury. Goodyear's argument is less about the amount of the verdict than the determination of proximate cause. As noted supra, the jury heard enough competent, credible evidence to support its determination on that issue.
We do not find any of Goodyear's claims of passion or prejudice viable, and further find that there is no showing that the jury's verdict was affected by any of the purported improprieties, or that an unreasonable amount of damages was thereby rendered. We overrule Goodyear's first assignment of error.
Goodyear's second and third assignments of error can be addressed together, as they state:
 II. THE TRIAL COURT ERRED IN FAILING TO GRANT THE APPELLANT'S MOTION FOR JUDGMENT NOTWITHSTANDING THE VERDICT.
 III. THE TRIAL COURT ERRED IN FAILING TO GRANT THE APPELLANT'S MOTION FOR A DIRECTED VERDICT.
Goodyear asserts the same legal error in both assignments; that it was entitled to judgment as a matter of law on Mrs. Urban's loss of consortium claim. The standard of review of this issue is the same regardless of whether the motion is for directed verdict or judgment notwithstanding the verdict. Both motions test the legal sufficiency, rather than the weight, of the evidence. Civ.R. 50(A), 50(B); Posin v.A.B.C. Motor Court Hotel, Inc. (1976), 45 Ohio St.2d 271, 275, 74 O.O.2d 427, 430, 344 N.E.2d 334, 338. A judge may not weigh the evidence nor test the credibility of the witnesses but must give to the party opposing the motion the benefit of all reasonable inferences from the evidence.Id. Where there is substantial competent evidence favoring the nonmoving party so that reasonable minds might reach different conclusions, the motion must be denied. Ramage v. Cent. Ohio Emergency Serv., Inc.
(1992), 64 Ohio St.3d 97, 109, 592 N.E.2d 828.
In order to prove a loss of consortium claim, the plaintiffs first must establish the underlying action. Although a separate cause of action, a consortium claim is a derivative claim in the sense that it can only be maintained if the primary negligence action is proven. Bowen v.Kil-Kare, Inc. (1992), 63 Ohio St.3d 84, 92-93, 585 N.E.2d 384, 392. Once that is shown, the complaining spouse must show damages proximately caused by the negligent act, much as the primary plaintiff must prove damages. Goodyear's claims are limited to whether Mrs. Urban proved she was entitled to damages. Loss of spousal consortium is generally defined as a deprivation of "society, services, sexual relations and conjugal affection which includes companionship, comfort, love and solace." Id. at 92, 585 N.E.2d at 391 (quoting Clouston v. Remlinger OldsmobileCadillac, Inc. (1970), 22 Ohio St.2d 65, 72, 51 O.O.2d 96, 100,258 N.E.2d 230, 234.
Mrs. Urban, in the late stages of pregnancy with the Urbans' second child, was confined to bedrest and did not testify at trial. The only evidence of her loss of consortium was Urban's testimony how his back condition interfered with his ability to help with child care and their intimate relations, and that his wife was forced to put up with his unpleasant moods when he was in pain. Goodyear argues that this evidence was insufficient to support Mrs. Urban's loss of consortium, as she was required to testify on her own behalf. We disagree.
Certainly Paul Urban himself was competent to testify concerning the effect his injury had upon his wife.
 "While the competent testimony of the injured spouse or a third party may be sufficient to support a consortium claim, the claimant's direct testimony would undoubtedly be more definitive and more pursuasive." Ward v. Herr Foods, Inc. (Aug. 16, 1990), Vinton App. No. 456, unreported, quoting 2 Matthew Bender, Damages in Tort Actions, at 11-16 through 11-27.
See, also, LaHav v. Beach (Nov. 3, 1995), Portage App. No. 94-P-0086, unreported. While we agree testimony from Mrs. Urban might have aided in further quantifying the extent of her losses, damages for loss of consortium, like damages for hedonic losses and pain and suffering, have an inescapable subjective quality that must be left to the jury. In this case, Urban's testimony was sufficient to prove the claim, and the jury's $5,000 award to Mrs. Urban was not unreasonable based on that evidence. We overrule Goodyear's second and third assignments of error.
Goodyear's fourth assignment of error raises another issue concerning the loss of consortium claim, stating:
 IV. THE TRIAL COURT COMMITTED PLAIN ERROR WHEN IT INSTRUCTED THE JURY THAT "ANY TIME A SPOUSE IS INJURED, THE SPOUSE IS TOO."
Because Goodyear made no objection to this statement made by the judge when she was explaining the nature of the case to the jury, it claims here that such an instruction constituted plain error. On this basis, we may reverse only if we find that it was error and that to allow the error to stand would impugn the integrity of our judicial process. Goldfuss v.Davidson (1997), 79 Ohio St.3d 116, 679 N.E.2d 1099, syllabus.
We note that it is somewhat misleading to claim that the judge "instructed" the jury in this regard because the comment complained of occurred in the introductory voir dire of the jury panel. After the evidence was heard, the judge charged the jury as follows:
 Now let me address the injuries claimed by Jean Urban. You will consider and include an amount that will reasonably compensate her for damages which you find resulted from a loss of consortium which you find she suffered as a direct result of the injury to her husband. Consortium consists of services, sexual relations, companionship, comfort, solace, and love of the other spouse.
Goodyear claims that the judge's comment during voir dire "instructed" the jury that it was required to award damages to Mrs. Urban if it awarded damages to Mr. Urban, and that its prejudicial effect was enhanced because it came at the beginning of trial and the jury heard all the evidence while laboring under this mistaken impression. Again, we disagree. The judge did not tell the jury that it was required to award damages to Mrs. Urban; the judge attempted to explain loss of consortium to the jury by stating only that "Ohio law recognizes that any time a spouse is injured, the spouse is too." This is arguably a correct statement of law. The liability elements of a loss of consortium claim are proven when the underlying tort is proven; therefore Ohio law does in fact presume liability for loss of consortium when a spouse is tortiously injured, much as it allows a finding of "negligence" prior to determining whether damages were proximately caused by the defendant's act. As with any injury, however, the loss of consortium must be translated into damages proximately caused by the tortious act. The judge's comment did not so prejudice the jury that the remainder of the proceedings were unfair, and certainly did not cause injustice requiring this court's action to protect the integrity of the judicial system. Goodyear had ample opportunity to clarify Mrs. Urban's duty to prove damages throughout trial, and there is no reason to believe that the jury did not follow the law provided in the judge's charge. We overrule the fourth assignment of error.
The fifth assignment of error states:
 V. THE TRIAL COURT ERRED IN FAILING TO GIVE THE APPELLANT'S REQUESTED INSTRUCTION ON SUPERSEDING CAUSE TO THE JURY AT TRIAL.
We review the failure to submit a jury instruction for abuse of discretion. Prejean v. Euclid Bd. of Edn. (1997), 119 Ohio App.3d 793,804-05, 696 N.E.2d 606, 613. If prejudice is shown, a legal error is always reversible; however, a judge has discretion to determine whether the evidence presented supports the giving of a certain instruction.Id.; State v. Wolons (1989), 44 Ohio St.3d 64, 68, 541 N.E.2d 443, 446. In this case the judge ruled that Goodyear had not presented evidence of a superseding cause, and denied the requested instruction.
Goodyear asserted that even if Urban's back condition was caused by the accident on November 14, 1995, the medical records showed evidence of an intervening incident between November 14 and November 28, 1995, namely the notation that Urban attributed his injury to his removal of tires from a truck. An intervening event breaks the causal connection between an accident and an injury if the intervening cause was not a reasonably foreseeable consequence of the first act, and is itself an independent cause of the injury. Westfield Ins. Co. v. Huls Am., Inc. (1998),128 Ohio App.3d 270, 286-87, 714 N.E.2d 934, 944-45. Although the judge did not state the basis for her decision, we find the requested instruction could have been excluded on a number of grounds. First, the judge simply could have found that the evidence did not support a finding that any intervening act occurred and she could have determined that there was no credible evidence that Urban injured himself while removing tires from a truck between November 14 and November 28.
Secondly, even if Goodyear intended to rely on the claim that Urban injured himself while removing tires from a truck, it presented no evidence that such an event was either unforeseeable or an independent cause of his injuries. Its claim was not based on an intervening cause because it had denied that its negligence was an initial cause. It wanted the jury to consider that some other event provided an independent, unrelated cause for Urban's back condition, but not to show that Urban's initial back injury was exacerbated by subsequent, superseding conduct. Had Goodyear utilized such a defense, however, it could not show that the intervening act was unforeseeable because it admitted at trial that Urban's job was physically demanding and, therefore, his alleged act of lifting tires could not have been unforeseeable.
Finally, having failed to convince the jury that Urban's alleged tire-lifting was the sole cause of his injury, Goodyear could not hope to prevail on its claim that Urban's alleged conduct was an independent cause. Assuming arguendo the jury accepted the arguments that Urban engaged in some heavy lifting between November 14 and November 28, it must have then rejected the argument that the lifting was the cause of his injury, either as a sole or intervening cause and the exclusion of Goodyear's instruction could not have been prejudicial. We overrule the fifth assignment of error.
Goodyear's sixth assignment of error states:
 VI. THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING THE APPELLEES PREJUDGMENT INTEREST UPON THE JURY VERDICT.
We agree that the standard of review for the grant of prejudgment interest is abuse of discretion. Kalain v. Smith (1986), 25 Ohio St.3d 157,159, 25 OBR 201, 203, 495 N.E.2d 572, 574. Again, however, we address claims of legal error de novo. Rohde, paragraph 2 of the syllabus.
Goodyear first argues that the judge was without discretion to award prejudgment interest, because the Ohio Supreme Court's decision in Stateex rel. Ohio Academy of Trial Lawyers v. Sheward (1999), 86 Ohio St.3d 451,715 N.E.2d 1062, invalidated the existing prejudgment interest statute and left no enforceable statute on which to base a prejudgment interest award. According to Goodyear, the 1997 amendment of R.C. 1343.03 by Am.Sub.H.B. 350 (H.B. 350) repealed all preexisting versions of the statute. It claims, therefore, that Sheward's invalidation of H.B. 350 not only foreclosed application of amended R.C. 1343.03, but all prior versions of the statute, because such repeal by H.B. 350 left a void that can be filled only by legislative action.
The Urbans counter that Sheward found H.B. 350 unconstitutional intoto and, therefore, not only was the adoption of amended R.C. 1343.03
invalidated, the repeal of the prior statute also was of no effect and the version of R.C. 1343.03 in effect prior to the adoption of H.B. 350 remains in effect. Moreover, even if no prejudgment interest statute existed, the judge would retain power to award prejudgment interest under common law principles. See, e.g., Moskovitz v. Mt. Sinai Med. Ctr.
(1994), 69 Ohio St.3d 638, 656-57, 635 N.E.2d 331, 346-47 (finding that prejudgment interest was known at common law). We agree with the Urbans here.
Goodyear next argues that it was an abuse of discretion to determine that it failed to negotiate a settlement in good faith, and that the Urbans did seek to settle in good faith. In order to merit prejudgment interest, the prevailing party must show that he attempted to settle the case in good faith, and that the opposing party did not make a good faith effort to settle the case. Kalain, supra. The Kalain test of good faith controls the determination with respect to both parties' conduct:
 A party has not "failed to make a good faith effort to settle" under R.C. 1343.03(C) if he has (1) fully cooperated in discovery proceedings, (2) rationally evaluated his risks and potential liability, (3) not attempted to unnecessarily delay any of the proceedings, and (4) made a good faith monetary settlement offer or responded in good faith to an offer from the other party. If a party has a good faith, objectively reasonable belief that he has no liability, he need not make a monetary settlement offer. Id. at syllabus.
Goodyear argues that it had an "objectively reasonable" defense to the Urbans' claims, because it had always denied responsibility for any damages due to Urban's back condition. We agree it was entitled to refuse settlement and rely on an objectively reasonable defense at trial, and we further agree that good faith cannot be determined simply by comparing the parties' settlement positions with the amount of the judgment. Therefore the Urbans cannot base their claim simply on the difference between their recovery and Goodyear's offer.
We first address Goodyear's claim that the Urbans failed to negotiate in good faith because they insisted on claiming some compensation for Urban's back injury. Goodyear cannot argue that the Urbans' settlement offers were without basis, or that they were required to negotiate on only its terms and accept the single $3,500 offer because Goodyear refused to discuss any compensation for the back injury. The judge was within her discretion to find that the Urbans' $75,000 demand was within reasonable bounds. The only remaining issue is whether it was an abuse of discretion to rule that Goodyear did not negotiate in good faith.
Goodyear was entitled to refuse settlement and proceed to trial on its defense of the back injury claim but an unreasonable refusal to negotiate settlement further harms injured plaintiffs and entitles them to compensation. Goodyear's reliance on the "objectively reasonable belief" prong of the Kalain syllabus glosses over the corresponding duty to rationally assess its liability. The fourth prong of the Kalain syllabus essentially states a conclusion that cannot be reached without compliance with the second prong. A party who has not rationally evaluated his risks and potential liability cannot then be said to have made or responded to a settlement offer in good faith, and cannot be said to have a good faith, objectively reasonable belief that he has no liability.
There was evidence that Goodyear's insurance adjustor had vainly encouraged it to make an offer that included compensation for Urban's back injury, and that it failed to evaluate the claim in a timely manner. There was evidence that at a scheduled final pretrial on August 24, 1998, in anticipation of the first scheduled trial date of September 30, 1998, the Urbans made a settlement demand of $75,000, but the Goodyear adjustor and other representatives did not evaluate the case until September 28, 1998.[1] At that point its adjustor's assessment of the settlement value of the Urbans' case was rejected and, on September 30, 1998, Goodyear made an offer of $3,500 against the adjustor's recommendation. From that date until the continued trial date April 14, 1999, no further offer was made, and Goodyear made no further effort to assess the case for settlement.
Goodyear's duty to assess its liability reasonably also included assessing the evidence that would be admitted at trial. Urban claimed that he hurt his back during the accident, and his physician opined that the claim was likely true, while Goodyear's expert held the contrary opinion that the accident could not have caused the back injury. Goodyear's defense obviously hinged on the jury's assessment of witnesses' credibility, especially that of Urban, and Goodyear at all times recognized that he was a credible witness and, in fact, helped bolster his credibility with the testimony of his supervisor. The evidence showed that Goodyear was well aware of its substantial exposure to liability for the back injury; in fact, it apparently rated its chances of prevailing at trial no better than fifty percent. It refused to negotiate any settlement whatsoever for the back injury despite its admitted negligence, Urban's undisputed injury, and at least a fifty percent chance of causation. On such facts a judge is entitled to award prejudgment interest. Galayda v. Lake Hosp. Sys., Inc. (1994),71 Ohio St.3d 421, 429, 644 N.E.2d 298, 304.
The judge is in a much better position to assess the reasonableness of parties' settlement postures, and absent some evidence showing a clearly arbitrary or unreasonable attitude, we will not disturb an award of prejudgment interest and Goodyear has not shown such abuse of discretion. We overrule the sixth assignment of error.
Judgment affirmed.
It is ordered that the appellees recover from appellant their costs herein taxed.
This court finds there were reasonable grounds for this appeal.
It is ordered that a special mandate issue out of this court directing the Cuyahoga County Common Pleas Court to carry this judgment into execution.
A certified copy of this entry shall constitute the mandate pursuant to Rule 27 of the Rules of Appellate Procedure.
[1] Although Goodyear argues that its offer was delayed because it had not yet received all of the Urbans' medical bills, we find such justification unavailing. Goodyear could have assessed its potential liability with respect to the claimed back injury before receiving all the medical bills. It was not the bills, but the medical records and expert assessments of Urban's condition that were of primary importance.
KENNETH ROCCO, J., CONCUR
JOHN T. PATTON, P.J., CONCURRING AND DISSENTING (SEE DISSENTING OPINION ATTACHED).